UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                            S1 07 CR 815-01 (HB)

       -v.-

VYACHESLAV MANOKHIN,

            Defendant.
-------------------------------------------------X

## VYACHESLAV MANOKHIN'S SENTENCING SUBMISSION

                                                  JAMES ROTH, ESQ. (0811)
                                                  HURWITZ STAMPUR & ROTH
                                                  299 Broadway, Suite 800
                                                  New York, NY 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

                                                              S1 07 CR 815-01 (HB)

      -v.-

VYACHESLAV MANOKHIN,

             Defendant.
-----------------------------------------------------X

### VYACHESLAV MANOKHIN'S SENTENCING SUBMISSION

Vyacheslav Manokhin respectfully makes the following submission in relation to his sentencing on May 14, 2008. As set forth below, the defendant respectfully submits that under the advisory sentencing guidelines, the applicable adjusted offense level is 13 and Mr. Manokhin's Criminal History Category is II, resulting in a guidelines range of 12-18 months' imprisonment.

The Probation Department concurs with this analysis and recommends a sentence of 366 days.[1]

It is respectfully submitted that when considered in conjunction with the factors set forth at 18 U.S.C. § 3553(a), a reasonable and appropriate sentence for Mr. Manokhin is a sentence of time served, 9 months and 9 days.

#### Procedural History

Mr. Manokhin appears before Your Honor pursuant to his plea of guilty on March 10, 2008 to a violation of 18 U.S.C. 371, Conspiracy to Commit Immigration Fraud. The plea was entered pursuant to a plea agreement.

#### Plea Agreement

The plea agreement sets forth the guidelines the parties believe are applicable to this case.

---

[1] A sentence of 366 days rather than 365 days affords Mr. Manokhin the benefit of good time reduction and results in an actual period of imprisonment of approximately 10 months.

Honorable Harold Baer
May 14, 2008
Page 2 of 7

- Pursuant to U.S.S.G. §2L2.1, the base offense level is 11.
- Pursuant to U.S.S.G. §3B1.3, a two-level increase in the offense level is warranted because the defendant abused a position of public trust in a manner that significantly facilitated the commission and concealment of the offense.
- Pursuant to U.S.S.G. §2L2.1(b)(1)(A), a three-level enhancement is warranted because the offense involved more than six but less than 24 sets of fraudulent documents.
- Based on the defendant's statement and timely plea allocation a three-level reduction is warranted for acceptance of responsibility, pursuant to §3E1.1(a) and §3E1.1(b).
- In accordance with the above, the applicable Guidelines offense level is 13.
- The defendant has no criminal history points. Thus, he has a Criminal History Category of II.
- Based upon the calculations set forth above, the applicable Sentencing Guidelines range is 12 to 18 months' imprisonment, and a fine range of $3,000 to $3,000.00.

The Presentence Report (the "PSR") adopted the foregoing analysis in its entirety.

### Defendant's Objections to the PSR

Defendant has reviewed the PSR and communicated any objections to the PSR under separate cover.

### KIMBOROUGH/GALL

A pair of recent decisions clarifies that the Supreme Court meant what it said in *United States v. Booker*, 125 S.Ct. 738 (2005). In *Kimborough v United States*, 128 S.Ct. 558 (2007) and *United States v Gall*, 128 S.Ct. 586 (2007), the Court held that a sentence outside the Guidelines is not per se invalid, but rather the Court applies a reasonableness standard. In *Gall*, the Supreme Court held that a Court of Appeals may not require sentences that deviate substantially from the Guidelines range to be justified by "extraordinary circumstances." 128 S.Ct. 586. The Guidelines are but one of the §3553 factors to be considered and do not carry

Honorable Harold Baer
May 14, 2008
Page 3 of 7

any special weight. "The Guidelines should be the starting point and the initial benchmark." Id. A judge must make an individualized assessment considering all the statutory factors.

### Consideration of Sentencing Factors

In determining a reasonable sentence, the sentencing judge is required to consider the factors set forth at 18 U.S.C. § 3553(a). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the need for deterrence and to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a). Considering the § 3553(a) factors, a sentence below the advisory guidelines range is reasonable and appropriate.

1. *Nature and Circumstances of the Offense, and History and Characteristics of the Defendant.*

Under Section 3553(a)(1), the sentencing court must first consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Section 3553(a)(2)(A) sets forth a related proposition that the sentence should "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense.

Mr. Manokhin is a 46 year old native of Russia, a veteran of the Russian army, a former professor in Russia, an accomplished translator for twenty years at the United Nations, and a devoted family man. In sum, a personal and professional history that suggests his involvement in this crime was aberrant behavior.

Mr. Manokhin was born in Kirov and raised under economically poor conditions in the city until the age of 17. (PSR ¶¶'s 68-69). His father, age 76, is a retired timber plant worker and his mother, age 72, is a retired kindergarten teacher. (*id.* at 91). Although Mr. Manokhin left Russia in 1988 he still commands the respect of over 160 family friends, as evidenced by a letter of support previously submitted. (*id.* at 79).

Honorable Harold Baer
May 14, 2008
Page 4 of 7

Mr. Manokhin graduated the Gorky Institute of Foreign Languages in 1984 (*id.* at 70), marrying his wife, the former Anna Tokar, the year before his graduation. Upon graduation, Mr. Manokhin learned to co-pilot heavy transport helicopters while serving 2 years in the Russian army. He obtained the rank of Flying Lieutenant. (*id.* at 71). Upon completion of his military service he returned to Gorky to assume the post of professor in the Gorky Institute of Foreign Languages. (*id.* at 72).

In 1988, Mr. Manokhin and his wife moved to New York to assume employment at the United Nations as a translator until the instant arrest. His skills as both a talented translator and upstanding individual are attested to by James A. Leo, PhD., former Chief Editor of the UN Development Program, a former colleague and friend. See Exhibit A.

Mr. Manokhin's two children Konstantin, age 16, and Antony, age 12, were born in the United States. The family has resided in Connecticut since the early 1990s. (PSR ¶¶ 74-75).

The attached letters from Manokhin's family, his wife and children portray a devoted husband, father, and family man (See Exhibit B). Mr. Manokhin's children are both honor students. The oldest boy Konstantin expresses the loss of his father's assistance with his daily homework. The younger boy Antony notes the loneliness created by his father's absence and the increase in his mother's daily responsibilities. His wife in her letter expresses her inability to fill the void of a father figure in her sons' lives.

Mr. Manokhin has struggled with alcoholism. Mr. Manokhin developed a drinking problem that resulted in one week of in-patient treatment in 2001 in Silver Hill Hospital in New Canaan, Connecticut. (PSR ¶ 85).He recounts that at the time of his arrest he was consuming a half liter of vodka every month. Despite professing to have his drinking under control—a review of the discovery produced in this case indicates the problem persisted during the time period of the criminal activity.

Reports of conversations between Manokhin and a UN investigator conducted in Manokhin's office at the United Nations recount that Manokhin was intoxicated on vodka while on the job. Additionally, at the time he made statements to investigators he was likewise intoxicated. It is reasonable to assume that Manokhin's alcoholism made him more susceptible to Derivianko's advances due to his impaired judgment.

Honorable Harold Baer
May 14, 2008
Page 5 of 7

## ROLE IN THE OFFENSE

It is noteworthy that there is nothing in the record that establishes that Manokhin profited monetarily from the scheme, as opposed to Derivianko who clearly did.

Moreover, Derivianko, was the initiator of this scheme and was the prime mover in terms of time devoted to constructing it and executing it. He worked out of the office of an immigration attorney and manipulated fax machine headers and produced phony letter heads to advance the scheme.

Derivianko was a long-time operative of the KGB. He was used to conspiring, plotting, and manipulating others. He exploited Manokhin's position at the UN and Manokhin's desire to aid individuals seeking to enter the United States. Manokhin received a two point enhancement for abuse of public trust due to his position in the UN. Although Derivianko did not receive this enhancement, it should be noted that Derivianko had UN identification which permitted him almost unrestricted access to the UN facilities. Manokhin did not sponsor Derivianko's UN identification.

   2.   *Need to Protect the Public from Further Crimes of the Defendant and Afford Adequate Deterrence.*

Section 3553(a)(2) also emphasizes that the Court consider the need to "protect the public from further crimes of the defendant" and "afford adequate deterrence to criminal conduct." Both of these principles have application here and both would be satisfied by a non-guidelines sentence slightly below the advisory guidelines.

The risk of recidivism based on Manokhin's age, 46, and background is virtually nil. He is a man who has served his country in the military, raised by all accounts a fine family, and maintained steady employment for 20 years.

The authority cited by Derivianko in support of "[t]he positive correlation between age and recidivism is impossible to deny." *United States v. Nellum*, No. 2:04-CR-30-PS, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005) applies to Manokhin. More specifically, courts have recognized that defendants over the age of forty are less likely to commit further offenses (*i.e.*, they have lower recidivism rates) than younger defendants, and that a defendant's age is therefore also a reason to impose a lower sentence. *See United States v. Carmona-Rodriguez*, No. 04 CR 667 (RWS), 2005 WL 840464 (S.D.N.Y. April 11, 2005)(imposing a term of incarceration of 30 months on a 55 year-old defendant where the Guidelines recommended a

Honorable Harold Baer
May 14, 2008
Page 6 of 7

minimum of 46 months); *Simon v. United States,* 361 F.Supp.2d 35 (imposing a term of incarceration of 240 months on a 43 year-old defendant where the Guidelines recommended a minimum of 324 months). Manokhin's argument that his current incarceration serves as a sufficient deterrence is far more compelling than Derivianko's in view of Derivianko's prior imprisonment.

Derivianko suffered four and one half years in prison and was actually aware of the hardships of incarceration, yet blatantly engaged in an illegal scheme that returned him to jail for violating the immigration laws that had been the basis of his detention. No doubt the impact on Derivianko of an additional nine (9) months' incarceration was negligible in contrast to the impact the same period of incarceration has had on Manokhin, a first-time offender.

Mr. Manokhin is most probably facing removal from the United States. (PSR ¶ 77). For all these reasons he poses no risk of danger to the public or threat of recidivism.

3. *Need to Avoid Unwarranted Sentence Disparities.*

Additional relevant factors in Section 3553(a) include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The consequences of Manokhin's conviction and incarceration has been greater than that suffered by Mr. Derivianko by the attendant demise in his mother's medical condition.

Mr. Manokhin's immigration status is in grave jeopardy by virtue of his conviction. His immigration status pursuant to G-4 Non-Immigrant Visa is contingent on maintaining employment at the UN. (PSR at ¶ 73). He is severed from his employment at the UN and will be terminated upon his release (*id.* at 89). Not only did his employment afford him a basis to stay in the United States, it provided him a comfortable lifestyle based on a salary in excess of $100,000. (*id.* at 89).

Although Mr. Manokhin has some assets, they are tied up in real estate. (*id.* at 92-93). He has considerable short-term debt that continues to mount due to his lack of employment. His wife is a homemaker. Accordingly, it is submitted that even a modest fine is not warranted.

Honorable Harold Baer
May 14, 2008
Page 7 of 7

## CONCLUSION

Mr. Manokhin requests that in view of the foregoing that he receive a sentence of time-served, a modest reduction from the suggested guideline sentence.

This sentence would be 7 more days than Derivianko's sentence. I am constrained only by the reality that Manokhin has been in jail longer than Derivianko not to ask for a more lenient sentence which, I otherwise submit, would be warranted given their respective backgrounds and roles in the offense.

Dated: New York, New York
       May 14, 2008

Respectfully submitted,

HURWITZ STAMPUR & ROTH (0811)
By:   JAMES ROTH, ESQ.
299 Broadway, Suite 800
New York, NY 10007

Attachs.

cc:   AUSA Michael Farbiarz (By ECF)
      Mr. Vyacheslav Manokhin (By Hand)
      Joel Dranove, Esq. (By ECF)

JR:jpy

JR/MANOKHIN, V/SENT.LTR